

**SHALOV STONE & BONNER** LLP

A T T O R N E Y S   A T   L A W

485 SEVENTH AVENUE • SUITE 1000 • NEW YORK • NEW YORK • 10018

TELEPHONE
(212) 239-4340

FAX
(212) 239-4310

March 21, 2006

WEB
WWW.LAWSSB.COM

VIA ECF SYSTEM AND OVERNIGHT MAIL

EMAIL

The Honorable Viktor V. Pohorelsky
United States Magistrate Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

<div style="margin-left: 2em;">

Re:   Linde v. Arab Bank, plc, No. 04 CV 2799 (NG)(VVP)
      Litle v. Arab Bank, plc, No. 04 CV 5449 (NG)(VVP)
      Almog v. Arab Bank, plc, No. 04 CV 5564 (NG)(VVP)
      Coulter v. Arab Bank, plc, No. 05 CV 365 (NG)(VVP)
      Afriat-Kurtzer v. Arab Bank, plc, No. 05 CV 388 (NG)(VVP)
      Bennet v. Arab Bank, plc, No. CV 05 3183(NG)(VVP)
      Roth v. Arab Bank, plc, No. CV 05 3738(NG)(VVP)

</div>

Dear Judge Pohorelsky:

My firm is local counsel for the plaintiffs in the Litle, Bennett, and Roth matters referenced above. On behalf of the plaintiffs in all of these matters ("Plaintiffs"), I respectfully submit this letter concerning the differences between the proposed scheduling orders submitted to the Court by the parties on Friday, March 17, 2006.

As I stated in my letter of March 17, 2006, defendant Arab Bank submitted its proposed order to Plaintiffs following the close of business on that date, after ignoring Plaintiffs' earlier requests that the Bank provide the proposed order to Plaintiffs before filing it with the Court. Now that Plaintiffs have seen Arab Bank's proposed Scheduling Order, Plaintiffs suspect that the parties can resolve certain of the differences outlined below in advance of the conference scheduled by the Court for April 28, 2006. We will endeavor to do so and will contact the Court before the conference to report on our progress.

Before turning to the scheduling order, it is necessary to address briefly Arab Bank's effort to paint Plaintiffs' counsel as somehow uncooperative and non-compliant with the Court's instructions. So as not to belabor the point, I have attached, in chronological order, as Exhibit A

SHALOV STONE & BONNER LLP

The Honorable Viktor V. Pohorelsky
March 20, 2006
Page 2

the parties' correspondence regarding the scheduling order. In three separate items of correspondence sent by Plaintiffs' counsel, we invited the Bank to provide Plaintiffs with proposed changes to the revised draft of the scheduling order Plaintiffs forwarded to the Bank's counsel on March 16, 2006. That correspondence demonstrates that Plaintiffs repeatedly expressed their willingness to consider any and all proposals by Arab Bank regarding scheduling issues and the proposed order submitted by Plaintiffs on March 17.[1] The Bank ignored those invitations, apparently to gain what it perceived as a tactical advantage.

As outlined below, there are seven noteworthy differences between the proposed schedules submitted by Plaintiffs (Ex. A to my March 17, 2006 letter) and Arab Bank (Exhibit D to Kevin Walsh's March 17, 2006 letter). In significant part, those differences relate to Plaintiffs' desire to have some reliable end date placed on the discovery in these actions. The first of these cases was commenced on July 2, 2004. Plaintiffs served their request for the production of documents on Arab Bank in February 2005. Nevertheless, at this juncture, more than 20 months after this litigation began, and 13 months after Plaintiffs commenced their discovery efforts, Arab Bank has produced a negligible percentage of the voluminous documents it admits are relevant to Plaintiffs' claims.[2] Furthermore, the Bank continues to advocate that it should be permitted an open-ended period of time to complete its efforts to secure the consent of its customers and regulators to produce the admittedly relevant documents. Our clients, who have suffered serious personal tragedies, quite understandably cannot agree to Arab Bank's deadline-less approach to its discovery obligations.

A review of the annotated version of the scheduling order set forth as Exhibit C to the March 17, 2006 Walsh letter ("Exhibit C") reveals the following significant differences between the parties' proposed orders.

    1.    On the top of page 3 of Exhibit C, Arab Bank deletes Plaintiffs' proposal that the

---

[1] Arab Bank also errs in suggesting that the Court ordered the parties to submit a "joint scheduling order." The February 28, 2006 Minute Entry on the Court's docket states that the "Parties shall submit a proposed discovery scheduling order by 3/17/06." It was not difficult to predict on February 28 that the parties would have different views regarding an appropriate schedule for this matter, and the Court said nothing in the Minute Entry or at the February 28, 2006 conference that preceded that order that precluded Plaintiffs from suggesting deadlines other than those to which Arab Bank consented.

[2] Plaintiffs best estimate is that Arab Bank has produced only 93 pages of liability-related documents. Recently, Arab Bank has made reference to the possibility that it will produce 150,000 or more pages of Arabic-language documents in the event it obtains approval to do so from its clients or as a result of foreign judicial or regulatory proceedings.

SHALOV STONE & BONNER LLP

The Honorable Viktor V. Pohorelsky
March 20, 2006
Page 3


Bank provide Plaintiffs with copies of admittedly relevant foreign-language documents before the Bank undertakes the oftentimes time-consuming process of obtaining formal translations of those documents. My firm has recently completed a review of approximately 150,000 documents that were primarily in Dutch and French. To say the least, the process of obtaining formal translations of those documents was cumbersome and time consuming. Although we utilized multiple translation services and paid significant premiums for expedited translations, it often took a month or more to obtain translations. Permitting Arab Bank to translate documents at a leisurely pace will needlessly delay this litigation. Once the Bank determines that documents are relevant, they should be produced, thereby allowing Plaintiffs to conduct their own review and to obtain any necessary translations.[3] Requiring the Bank to produce documents once it determines that the documents are relevant will have the beneficial impact of speeding the Bank's production and the ultimate resolution of this litigation. No corresponding benefit will result from allowing the Bank to withhold admittedly relevant documents until it obtains formal translations of them.

     2.    The same entry on the top of page 3 of Exhibit C deletes Plaintiffs' proposal that the Bank be required to commence its production no later than July 1, 2006. The Bank has stated that it will decide whether it will produce documents it claims are protected by a bank secrecy protection from disclosure when it is ordered to begin production, when it obtains foreign judicial or regulatory approval to do so, or when it obtains its clients' consent to make disclosure. Nevertheless, the Bank has declined Plaintiffs' request that the Bank commence the process of obtaining client consents simultaneously with its other supposed efforts to obtain permission to disclose the documents requested by Plaintiffs. That is the case although, presumably, the Bank will inform its clients that it will be producing their account records before the Bank commences its production. The Bank has also informed Plaintiffs that it is uncertain whether the proceedings the Bank has commenced abroad to obtain court or regulatory permission to disclose documents to Plaintiffs will be considered precedential. Thus, it is possible that the Bank will have to commence hundreds, or thousands, of individual proceedings abroad to obtain the judicial or regulatory permission it seeks to produce the documents relevant to this action. In light of the Bank's refusal to commence the process of seeking its customers' consent to produce the documents the Bank has repeatedly stated to Plaintiffs and in Court it wants to disclose, the open-ended process the Bank suggests is certain to needlessly delay this litigation.

     The bank secrecy issues presented by this case are no more complicated than the privilege issues that arise in most complex cases. Indeed, in light of the paucity of foreign law interpreting the provisions Arab Bank claims are relevant here, those matters are less complicated than the discovery issues that typically arise in complex cases. Yet, Fed. R Civ. P. 16 prescribes that

---

    [3] Arab Bank's suggestion that Plaintiffs have waited until they obtained formal translations of relevant documents before producing them to the Bank is incorrect.

SHALOV STONE & BONNER LLP

The Honorable Viktor V. Pohorelsky
March 20, 2006
Page 4


*every* case (barring certain very limited exceptions inapplicable here) will have a Scheduling Order, with real deadlines, including a deadline "to complete discovery." Fed. R. Civ. P. 16(b). Forcing Plaintiffs to commence discovery without knowing whether Arab Bank will produce relevant documents is unfair to Plaintiffs, and needlessly costly to all parties, who will undoubtedly need to re-open depositions to examine witnesses regarding the content of documents that are produced belatedly. Accordingly, as mandated by Rule 16, the Scheduling Order should prescribe a "real" deadline for the completion of discovery, including Arab Bank's production of its admittedly relevant documents.

3.      In the March 24, 2006 entry to the Exhibit C, the Bank has wordsmithed certain language suggested by Plaintiffs. The revised version now provides, in a proposed order of this Court, that certain "jurisdictions' bank secrecy laws *prohibit* Arab Bank from producing documents enumerated in the Production Order." (Emphasis added). Clearly, the Court has not ruled that any jurisdictions' bank secrecy laws prohibit Arab Bank from producing documents. Thus, the language suggested by Arab Bank is inappropriate.

4.      Arab Bank has deleted language from the April 15, 2006 entry that would have required the Bank to identify any documents it has transferred out of the possession, custody or control of the Bank's New York Branch since this litigation commenced. Plaintiffs would be satisfied with a representation from the Bank, similar to the statement made in footnote 3 to Exhibit C, that no documents relevant to this litigation have been removed from Arab Bank's New York Branch since the commencement of the <u>Linde</u> action.

5.      The April 25, 2006 deadline should refer to all claims of privilege that the Bank intends to invoke with respect to all documents, including any regulatory or foreign privileges and any American-law privileges Arab Bank intends to rely upon (*e.g.,* the self-critical analysis privilege, any bank regulatory privilege etc.) For now, Plaintiffs are willing to forego a listing of the documents purportedly subject only to a bank secrecy immunity from production.

6.      In the May 15, 2007 entry, Arab Bank has proposed that experts be permitted to file rebuttal reports *after* the close of expert depositions. This renders the proposed order internally inconsistent because it creates an April 1, 2007 deadline for the submission of expert rebuttal reports. Additionally, Fed. R. Civ. P. 26(a)(2)(C) provides only for one round of rebuttal reports. Normally, parties submit only one set of rebuttal reports because experts must set forth all of their opinions in their initial reports. Fed. R. Civ. P. 26(a)(2)(B). Counsel in this action are perfectly capable of fleshing out those opinions in one round of depositions. Thus, there is no need for a second round of rebuttal reports. Alternatively, Plaintiffs do not oppose scheduling the second round of rebuttal reports to occur before the close of expert discovery so that experts are not permitted to express additional opinions *after* the deadline for deposing them has passed.

SHALOV STONE & BONNER LLP

The Honorable Viktor V. Pohorelsky
March 20, 2006
Page 5


7.      Arab Bank has altered the deadlines for submitting the proposed Pre-Trial Order and the Filings Prior to Trial in Civil Cases required by Judge Gershon's personal practices (the penultimate and last entries to Exhibit C). By doing so, Arab Bank has placed the deadline for the proposed Pre-Trial Order squarely in the middle of the 30 days plaintiffs have to prepare their oppositions to any *Daubert* or summary judgment motions. In light of the detailed nature of the proposed Pre-Trial Order Judge Gershon requires, that proposal seems no more equitable than shortening the duration from the completion of discovery until the due date of the proposed Pre-Trial Order to 45 days, thereby requiring that proposed order to be filed on the same date as the *Daubert* and summary judgment motions. Following that schedule would be consistent with Judge Gershon's individual practices, which provide only that "[u]nless otherwise ordered by the Court," the Joint Pre-Trial Order should be filed "within 60 days from the date for the completion of discovery in a civil case." *See* Judge Gershon's Individual Practices at § 4.A. Ultimately, it makes more sense for the Joint Pre-Trial Order to follow the completion of the briefing of dispositive motions, as is normally the case in complex actions. Plaintiffs do not agree, however, with Arab Bank's alternative suggestion that the filing of the Pre-Trial Order be postponed until the dispositive motions are resolved.

Thank you for your consideration of these matters.

Respectfully submitted,

James P. Bonner

cc: All Counsel (by electronic mail)