

**OSEN & ASSOCIATE, LLC**

ATTORNEYS AT LAW
700 KINDERKAMACK ROAD, ORADELL, NEW JERSEY 07649
TELEPHONE 201.265.6400  FACSIMILE 201.265.0303
WWW.OSEN.US

July 14, 2006

**VIA ECF AND FEDEX**

Honorable Nina Gershon
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  **Linde v. Arab Bank, plc**, No. 04 Civ. 2799 (NG) (VVP)
     **Litle v. Arab Bank, plc**, No. 04 Civ. 5449 (NG) (VVP)
     **Almog v. Arab Bank, plc**, No. 04 Civ. 5564 (NG) (VVP)
     **Coulter v. Arab Bank, plc**, No. 05 Civ. 365 (NG) (VVP)
     **Afriat-Kurtzer v. Arab Bank, plc**, No. 05 Civ. 388 (NG) (VVP)
     **Bennett v. Arab Bank, plc**, No. 05 Civ. 3183 (NG) (VVP)
     **Roth v. Arab Bank, plc**, No. 05 Civ. 3738 (NG) (VVP)
     **Weiss v. Arab Bank, plc**, No. 06 Civ 1623 (NG) (VVP)

Dear Judge Gershon:

On behalf of the plaintiffs in the above-entitled cases[1] (the "Plaintiffs"), we write in response to Arab Bank's letter to the Court dated July 7, 2006, and its arguments concerning Judge Glasser's decision in *Stutts v. The De Dietrich Group, et al.*, 03-CV-4058 (ILG), a copy of which Arab Bank's counsel enclosed.

Defendant's latest effort to re-argue this Court's prior decision denying, in part, its motion to dismiss fares no better than its various prior attempts. Notwithstanding Defendant's assertion that the holding in *Stutts* is of "particular importance" to the *Linde* and *Litle* cases, the factual allegations in that case do not even remotely resemble the allegations set forth against Arab Bank by the Plaintiffs here. For the reasons set forth in brief below, Defendant's arguments again fail to support its motion for an interlocutory appeal of this Court's prior Order.

In *Stutts*, plaintiffs sued, *inter alia*, a group of banks (the "Bank Defendants") on the theory that, by giving letters of credit to manufacturers in the 1980s, the Bank Defendants enabled the manufacturers to sell chemicals to Iraq, which Saddam Hussein used to manufacture chemical weapons, which he then stockpiled in Iraq, which stockpiles were then bombed by

---

[1] The *Almog* and *Afriat-Kurtzer plaintiffs* join in the arguments set forth in this letter, and may write to the Court separately to address issues raised by Defendant's letter which go beyond the scope of claims brought under the Anti-Terrorism Act, 18 U.S.C. § 2333(a) ("ATA").

U.S.-led Coalition Forces during the 1991 Gulf War, which detonated some of the Iraqi chemical weapons, releasing toxic emissions into the atmosphere, which plaintiffs (members of the U.S. armed forces) inhaled, causing them inhalation injuries for which the Bank Defendants were allegedly liable. Judge Glasser summarized the *Stutts* plaintiffs' theory of causation and foreseeability as follows:

> What the plaintiffs essentially ask the Court to accept is that by providing letters of credit to manufacturers of chemicals, the Bank Defendants should have perceived the risk that those chemicals would be sold to Iraq; that Saddam Hussein would use those chemicals to manufacture lethal weapons; that those weapons would be stockpiled in a location that would one day be bombed by coalition forces; that the bombs would hit and detonate those weapons; that the detonation would cause the toxic emissions to be released; that those emissions would permeate the atmosphere; that the plaintiffs would be present in that atmosphere, inhale those emissions and sustain the injuries alleged. [*Stutts* Op. at * 35.]

Analogizing the instant cases to the *Stutts* plaintiffs' attenuated causation theory is wrong for five reasons.

First, the *Stutts* plaintiffs asserted only one statutory claim that is even remotely similar to the claims asserted in the *Linde* and *Litle* cases. The *Stutts* plaintiffs asserted a single claim predicated on their theory that the Bank Defendants' provision of letters of credit constituted aiding and abetting "acts of international terrorism" under 18 U.S.C. § 2331. Judge Glasser did *not*, contrary to Arab Bank's characterization, reject the proposition that 18 U.S.C. § 2333(a) gives rise to a common law claim of aiding and abetting. Instead, he held merely that the *Stutts* plaintiffs failed to plead adequately that the Bank Defendants knew that providing financing to chemical manufactures would aid and abet the subsequent manufacture of chemical weapons by a foreign regime who would store them at locations where the weapons would be detonated by U.S. forces 10 years later during a war, thereby forseeably exposing the *Stutts* plaintiffs to potential harm. In contrast, Your Honor found that plaintiffs properly pled, *inter alia*, that Arab Bank's maintenance of a "death and dismemberment benefit plan" for suicide bombers and their families, as well as provision of banking services for fronts and agents of Foreign Terrorist Organizations ("FTOs") aided and abetted a campaign of bloodshed and terrorism.

Second, it is not evident that the *Stutts* plaintiffs even alleged the commission of any act of international terrorism – the predicate for liability under 18 U.S.C. § 2333. At best, the *Stutts* plaintiffs alleged that they were injured by exposure to chemicals belonging to a terror-sponsoring state. By contrast, the plaintiffs in *Linde* and *Litle* indisputably pled that they have been injured by reason of terrorist attacks such as suicide bombings and shootings – acts of international terrorism. As this Court noted in the above-captioned cases:

> Plaintiffs' claims under the ATA are based on two factual theories of conduct. The first factual theory is that the Bank's activities in administering the death and

dismemberment benefit plan created an incentive for the commission of the terrorist acts by Palestinians in Israel which injured plaintiffs and thus substantially assisted their commission. The second factual theory concerns the banking services the Bank provides to the various organizations which plaintiffs allege are fronts for, or agents of, HAMAS, a designated foreign terrorist organization. Plaintiffs contend that, on the basis of these two factual courses of conduct, the Bank may be held secondarily liable for their injuries under theories of civil aiding and abetting and civil conspiracy. Plaintiffs also maintain that the Bank's actions constituting material support for terrorists and terrorist organizations in violation of 18 U.S.C. §§ 2339A and 2339B and financing in violation of 18 U.S.C. § 2339C create direct bases for liability.

Thus, in contradistinction to the *Stutts* plaintiffs, the *Linde* and *Litle* plaintiffs alleged iolations of the ATA's material support statutes, 18 U.S.C. §§ 2339A, 2339B and 2339C. The *Stutts* plaintiffs neither alleged that the Bank Defendants violated the material support statutes nor could they allege that the Bank Defendants provided financial services to an FTO, let alone that an FTO was responsible for the activities that caused their injuries.

Third, Plaintiffs allege conduct that lies at heart of the ATA, which creates a civil remedy expressly intended by Congress to "interrupt, or at least imperil, the flow of terrorism's lifeblood: money." S. Rep. No. 102-242, 102d Cong., 2d Sess. 22 (1992). *See also Boim v. Quranic Literacy Inst. and Holy Land Foundation For Relief and Development*, 291 F.3d 1000, 1019 (7th Cir. 2002) (noting that under 18 U.S.C. § 2333, "Congress' stated purpose [is] ... cutting off the flow of money to terrorists at every point along the chain of causation."). The *Linde* and *Litle* plaintiffs alleged hat by knowingly transferring funds to fronts for HAMAS, Palestinian Islamic Jihad ("PIJ"), and Al Aqsa Martyrs Brigade ("AAMB"), designated FTOs which carried out the terror attacks that injured most of the plaintiffs, Arab Bank provided material support to FTOs in violation of 18 U.S.C. § 2339B. In sharp contrast, the plaintiffs in *Stutts*, "*do not make allegations concerning ...* [this] *section*[] in their complaint." *Stutts* Op. at * 7 n.7.

Providing financial services to FTOs like HAMAS, PIJ and AAMB is precisely (and expressly) the type of conduct that the ATA and the material support statutes were enacted to punish and deter. There is simply no equivalent statutory interest in the provision of letters of credit to otherwise legitimate manufacturers who, in turn, sell chemicals to a foreign state who uses them to make weapons which are ultimately detonated by U.S. military forces in an unforeseeable war ten years later. Indeed, Arab Bank is alleged to have provided financial services to well-known HAMAS and PIJ fronts, some of whom were themselves designated as Specially Designated Global Terrorists, and is also alleged to have administered a "death and dismemberment benefit plan" that provides financial incentives to suicide bombers and their families to engage in their murderous conduct.

Fourth, as Judge Glasser summarized, the Bank Defendants in *Stutts* were not even charged with foreseeing that some underlying sales transaction for which they issued letters of

credit would lead to Iraq's use of chemical weapons against enemies outside Iraq, a foreseeability which, if attenuated, might nevertheless have been theoretically plausible. Rather, the Bank Defendants, according to the *Stutts* plaintiffs, should have foreseen that their letters of credit would lead to the detonation of chemical weapons stockpiles by Coalition Forces in Iraq *a decade later*. See *Stutts* Op. at *8-9. Unsurprisingly, Judge Glasser concluded that "[t]o attribute such foresight to the Banks is to attribute a prescience that is beyond human ken." *Id.* at * 36.

Here, in contrast, the *Linde* and *Litle* pleadings chargedArab Bank with foreseeing that any fungible funds that its knowingly sent to HAMAS, Palestinian Islamic Jihad and other FTOs, as well as administering a "martyrs' insurance program" would be used, in part, to facilitate terrorist attacks. This insight hardly requires "a prescience that is beyond human ken," to quote Judge Glasser. Rather, Arab Bank asks this Court to reject Congress's express finding that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that *any contribution to such an organization facilitates that conduct*." Antiterrorism Act of 1996, Pub. L. No. 104-132, sec. 301(a)(7), 110 Stat. 1247 (emphasis added). *See also, Boim v. Quranic Literacy Inst.*, 127 F. Supp. 2d 1002, 1019 (N.D. Ill. 2001) (noting that "Congress believed that funding terrorists or terrorist organizations causes the harm of the terrorists' subsequent attacks."). This insight which Arab Bank apparently protests as unreasonable is, in fact, the *central* premise of the entire FTO designation process and related terror financing/anti-money laundering watch lists and due diligence regulations to which financial institutions, such as Arab Bank, are especially subject.

"[I]f the actor should have realized that his conduct might cause harm to another in substantially the manner in which it is brought about," the *Restatement (Second) of Torts* comments, "the harm is universally regarded as the legal consequence of the actor's negligence." *Restatement (Second) Of Torts* § 435, cmt. b, pt. 1 (1979) In *Stutts*, Judge Glasser found that the Bank Defendants could not have realized that by issuing letters of credit, they would, ten years later, cause inhalation poisoning to persons exposed to emissions released by Coalition bombing of chemical weapons in a war on Iraq. However, it does not follow that this Court should find, as a matter of law, that Arab Bank could *not* reasonably foresee that providing financial services and administering a death-and-dismemberment benefit plan for HAMAS and other FTOs, in the maelstrom of a contemporaneous and ongoing terror campaign, would substantially assist terrorist attacks of the kind that injured Plaintiffs.

Finally, Arab Bank again states that the "Plaintiffs in the cases before this Court ... have not alleged, and cannot allege, that Arab Bank intended[2] to fund the particular activities that

---

[2] As this Court has correctly held, knowledge – not specific intent – is all that plaintiffs are required to allege in order to state their claims under 18 U.S.C. § 2339B. *See, e.g., Linde v. Arab Bank, plc*, 384 F. Supp. 2d 571, 587 n.11 (E.D.N.Y. 2005) (rejecting any reading of *Boim* that requires more than knowledge by defendant that organization to which material support is provided is designated or is engaged in terrorist activities pursuant to 18 U.S.C. § 2339B).

allegedly give rise to their injuries." Def. Letter at 2. Your Honor has already addressed Defendant's argument "that the requisite intent is the specific intent to cause the acts of terrorism which injured the plaintiffs" and has properly and logically rejected it. Unlike the "[i]ssuers of letters of credit" in the *Stutts* case, who were "third parties ignorant of the specifics of the transactions," here Arab Bank is clearly alleged to have had knowledge of the hundreds of thousands of transactions it was processing.[3] Arab Bank, of course, is entitled to deny either that its customers are in fact fronts for HAMAS and other FTOs and/or to continue to deny that it had any knowledge of the true identity of dozens of its customers or the purpose of the hundreds of thousands of Saudi Committee transactions it processed. These issues, however, do not involve the legal sufficiency of the *Linde* and *Litle* pleadings, but the sufficiency of evidence at trial. Accordingly, Arab Bank's latest effort again fails to warrant Defendant's request for an interlocutory appeal.

In short, nothing that Judge Glasser concluded about the uniquely attenuated theory of ATA liability in *Stutts* provides support for dismissal of any of the ATA claims brought against Arab Bank. The *Stutts* decision is based upon a fact pattern distinct at several critical junctures from the one considered by this Court in *Linde* and *Litle*. Accordingly, for the reasons set forth above, Plaintiffs' respectfully submit that the Court's decision in *Linde v. Arab Bank, plc* correctly set forth the legal standards required by the ATA, and renew and reiterate their request that Defendant's motion for an interlocutory appeal of the Court's prior rejection of its motion to dismiss be denied.

Respectfully submitted,

Gary M. Osen

cc: All counsel on service list.

---

[3] It is now beyond dispute that Arab Bank has, in fact, maintained numerous accounts and transferred millions of dollars for various Specially Designated Global Terrorists and HAMAS front organizations identified as such in U.S. government indictments. Moreover, Arab Bank has produced approximately 175,000 Saudi Committee transactions involving the transfer of tens of millions of dollars to HAMAS front organizations identified as such in U.S. government indictments and to hundreds, if not thousands of individuals situated within Palestinian territories.

**SERVICE LIST**

Kevin Walsh, Esq.
(kwalsh@llgm.com)
Ronald W. Zdrojeski, Esq.
(rzdrojes@llgm.com)
LEBOUEF, LAMB, GREENE & MACRAE LLP
125 West 55th Street
New York, N.Y. 10019
Telephone:  (212) 424-8000
Facsimile:  (212) 424-8500

Counsel for Defendant Arab Bank
**By Electronic Mail**

Gary M. Osen, Esq.
(gmo@osen.us)
Joshua D. Glatter, Esq.
(jdg@osen.us)
Naomi B. Weinberg, Esq.
(nbw@osen.us)
Peter Raven-Hansen, Esq.
(pravenhansen@gmail.com)
OSEN & ASSOCIATE, LLP
700 Kindermack Road
Oradell, N.J. 07649
Telephone:  (201) 265-6400
Facsimile:  (201) 265-0303

Counsel for Linde & Coulter Plaintiffs
**By Electronic Mail**

Robert A. Swift, Esq.
(rswift&kohnswift.com)
Steven M. Steingard, Esq.
(ssteingard@kohnswift.com)
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:  (215) 238-1700
Facsimile:  (215) 238-1968

Counsel for Linde & Coulter Plaintiffs
**By Electronic Mail**

1

Andrew D. Friedman, Esq.
(afriedman@gbgfriedman.com)
Glancy Binkow & Goldberg LLP
430 Park Avenue
New York, New York 10022
(212) 308-6300

Counsel for Linde & Coulter Plaintiffs
**By Electronic Mail**

Ronald L. Motley, Esq.
(rmotley@motleyrice.com)
Jodi W. Flowers, Esq.
(jflowers@motleyrice.com)
John M. Eubanks, Esq.
(jeubanks@motleyrice.com)
Michael Elsner, Esq.
(melsner@motleyrice.com)
Justin Kaplan, Esq.
(jkaplan@motleyrice.com)
MOTLEY RICE LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mt. Pleasant, SC 29465
Telephone   (843) 216-9000
Facsimile   (843) 216-9450

Counsel for Almog and Afriat-Kurtzer Plaintiffs
**By Electronic Mail**

Alan Gerson, Esq.
(gerson@gilgintl.org)
2131 S. Street
Washington, D.C. 20008
Telephone:  (202) 966-8557
Facsimile:  (202)

Counsel for Almog Plaintiffs
**By Electronic Mail**

Lee S. Shalov, Esq.
(lshalov@lawssb.com)
James P. Bonner, Esq.
(jbonner@lawssb.com)
SHALOV, STONE & BONNER LLP
485 Seventh Avenue
Suite 1000

2

New York, N.Y. 10018
Telephone:  (212) 239-4340
Facsimile:  (212) 239-4310

Counsel for Litle Plaintiffs
**By Electronic Mail**

Mark S. Werbner, Esq.
(mwerbner@swtriallaw.com)
SAYLES WERBNER P.C.
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
Telephone:  (214) 939-8711
Facsimile:  (214) 939-8787
Counsel for Litle Plaintiffs
**By Electronic Mail**

Steven R. Perles, Esq.
(sperles@perleslaw.com)
Edward MaCallister, Esq.
(emacallister@perleslaw.com)
PERLES LAW FIRM, P.C.
1615 New Hampshire Avenue, Suite 200
Washington, D.C. 20009
Telephone:  (202) 745-1300
Facsimile:  (202) 745-1858

Counsel for Litle Plaintiffs
**By Electronic Mail**

Richard D. Heideman, Esq.
(rheideman@hlnklaw.com)
Tracey Reichman Kalik, Esq.
(trkalik@hlnklaw.com)
Noel J. Nudelman, Esq.
(njnudelman@hlnklaw.com)
HEIDEMAN LEZELL NUDELMAN & KALIK, P.C.
1146 19th Street, NW
Fifth Floor
Washington, D.C. 20036
Telephone:     (202) 463-1818
Facsimile:     (202) 463-2999

Counsel for Litle Plaintiffs
**By Electronic Mail**