IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ------------------------------------------------------- X | |
| PHILIP LITLE, et al.<br><br>Plaintiffs,<br><br>v.<br>ARAB BANK, PLC,<br><br>Defendants. | CASE NO.: cv-04 5449(NG)(VVP) |
| ------------------------------------------------------- X | |
| ORAN ALMOG, et al.<br><br>Plaintiffs,<br><br>v.<br>ARAB BANK, PLC,<br><br>Defendants. | CASE NO.: cv-04 5564(NG)(VVP) |
| ------------------------------------------------------- X | |
| GILA AFRIAT-KURTZER, et al.<br><br>Plaintiffs,<br><br>v.<br>ARAB BANK, PLC,<br><br>Defendants. | CASE NO.: cv-05 388(NG)(VVP) |
| ------------------------------------------------------- X | |
| MICHAEL BENNETT, et al.<br><br>Plaintiffs,<br><br>v.<br>ARAB BANK, PLC,<br><br>Defendants. | CASE NO.: cv-05 3183(NG)(VVP) |
| ------------------------------------------------------- X | |
| ARNOLD ROTH, et al.<br><br>Plaintiffs,<br><br>v.<br>ARAB BANK, PLC,<br><br>Defendants. | CASE NO.: cv-05 3738(NG)(VVP) |
| ------------------------------------------------------- X | |
| JOSEPH JESNER, et al.<br><br>Plaintiffs,<br><br>v.<br>ARAB BANK, PLC,<br><br>Defendants. | CASE NO.: cv-06 3869(NG)(VVP) |

**DECLARATION OF AMOS SHAPIRA IN SUPPORT OF
THE SUPPLEMENTAL MEMORANDUM OF LAW BY THIRD PARTY
DEFENDANTS BANK HAPOALIM, ISRAEL DISCOUNT BANK LTD., AND
MERCANTILE DISCOUNT BANK IN SUPPORT OF THEIR MOTION TO
DISMISS THE THIRD PARTY COMPLAINTS FOR FORUM NON CONVENIENS**

AMOS SHAPIRA hereby declares, pursuant to 28 U.S.C. § 1746, the following to be true and correct:

1.      I make this Declaration in support of the Motion to Dismiss Arab Bank's Third Party Complaints for Forum Non Conveniens filed by Bank Hapoalim B.M., Israel Discount Bank Ltd., and Mercantile Discount Bank.  I will refer to these third-party defendants collectively as "the Israeli Banks."

2.      I am a professor of law at the Faculty of Law, Tel Aviv University, specializing in Private International Law (Conflict of Laws).

3.      I attach as Exhibit 1 hereto my professional C.V. and list of selected publications.

4.      I have been asked to express my opinion about Israeli law with respect to several issues concerning the above matter.  For that purpose I received and perused the following documents:

> (a)      the First Amended Complaint in *Almog et al.  v. Arab Bank, PLC*;
>
> (b)      the Third-Party Complaint in *Almog*;
>
> (c)      this Court's opinion in *Linde, et al. v. Arab Bank, PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005);
>
> (d)      this Court's opinion *Almog, et al. v. Arab Bank, PLC*, 471 F. Supp. 2d 257 (E.D.N.Y. 2007);
>
> (e)      Israeli statutes and regulations;
>
> (f)      Case law from the Israeli Supreme Court, as well as other Israeli courts, that I have deemed relevant for purposes of preparing this opinion.

5.      I understand that Arab Bank has been sued for damages on various claims pursuant to U.S. law and that Arab Bank, on its part, brought the Third Party Complaints against the Israeli Banks for contribution.

6.      I have been asked by the Israeli Banks to express my opinion about whether Israel would be an adequate alternative forum for Arab Bank's contribution claims against them.  The following is my opinion.

## Summary of Opinion

7.      My opinion may be summarized as follows:

(a)      Israeli courts recognize contribution claims.

(b)      Israeli courts have jurisdiction over Bank Hapoalim B.M., Israel Discount Bank Ltd., and Mercantile Discount Bank Ltd.

(c)      Israeli courts are likely to act independently and fairly, providing due process to all parties regardless of nationality or political affiliation.

(d)      Israeli courts apply foreign, including U.S., law.

(e)      Customary International Law is part of Israeli domestic law.

(f)      Israeli courts are not unduly congested and they resolve cases within a reasonable time span.

(g)      Israeli courts can readily subpoena documents and witnesses located in Israel.

(h)      Israeli courts can enforce judgments against Bank Hapoalim B.M., Israel Discount Bank Ltd., and Mercantile Discount Bank Ltd. in Israel.

For all of these reasons, I believe that Israel would be an adequate forum for the litigation of Arab Bank's Third Party Complaints.

## Israeli Courts Recognize Contribution Claims

8.      Section 84 of the Civil Wrongs Ordinance [New Version], 1968 provides as follows:

(a)    Any civil wrongdoer liable in respect of the damage may recover contribution from any other civil wrongdoer who is, or would if sued have been, liable for the same damage, whether as a joint civil wrongdoer or otherwise, so, however, that no person shall be entitled to recover contribution under this subsection from any person entitled to be indemnified by him in respect of the liability in respect of which the contribution is sought.

(b)    In any proceedings for contribution under this section, the amount of the contribution recoverable from any person shall be such as may be found by the court to be just and equitable having regard to that person's responsibility for the damage; and the court shall have power to exempt any person from liability to make contribution, or to direct that the contribution to be recovered from any person shall amount to a complete indemnity.

9.    Israeli courts regularly entertain contribution claims,[1] and will treat foreign parties seeking contribution damages honestly and fairly.

10.    I know of no reason why an Israeli court would refuse to award contribution damages to a foreign plaintiff suing Israeli defendants, including for violations of foreign law and even for acts occurring abroad, if the foreign law in question is the applicable law in the case at hand under the relevant Israeli choice-of-law rule.

## Israeli Courts Have Jurisdiction over the Israeli Banks

11.    Israel's district courts have general jurisdiction over claims valued at more than 2.5 million shekels (approximately $600,000 under the current rate of exchange); claims for less fall within the jurisdiction of Israel's magistrate courts. Generally speaking, both types of courts apply the same substantive law and rules of procedure. Both types of courts are generally

---

[1]  *See, e.g.*, Civil Appeal 1989/78 *Patao v. Zion Insurance Co. LTD*, District Courts Judgments vol. 45(1) p. 45; Civil Appeal 448/83 *Kornhauzer et al. v. Melekh*, Supreme Court Judgments vol. 42(2) p. 573; Civil Appeal 483/84 *"Karnit" Road Accidents Victims Compensation Fund v. Abraham*, Supreme Court Judgments vol. 41(4), p. 754; Civil Appeal 4530/91 *Ports and Railways Authority v. Zim Israel Navigation Co. Ltd.*, Supreme Court Judgments Vol. 54(4), p. 583; Civil Appeal 3214/98 *Schloss v. Ragumi (1978) Ltd.*, Supreme Court Judgments Vol. 58(4) 445.

empowered to exercise their jurisdiction on Israeli domiciled defendants, including legal entities registered, headquartered, or regularly conducting business in Israel.  Jurisdiction in either type of court accrues upon the service of process (i.e., a notice regarding the initiation of the proceeding and the attached statement of claim) on the defendant.  I will presume that were Arab Bank to bring a contribution claim against the Israeli Banks in Israel, a district court would hear such claim.

12.     Israeli courts will have jurisdiction over Bank Hapoalim B.M., Israel Discount Bank Ltd. and Mercantile Discount Bank Ltd., as these banks are each registered, headquartered, and regularly doing business in Israel.

## Israeli Courts Are Independent and Fair, and Provide Due Process to All Parties

13.     I believe that the judiciary in Israel is independent and honest and that Arab Bank could expect a fair trial in Israel notwithstanding the political flavor of the contribution claim's underlying circumstances.

14.     It should be emphasized that judges in Israel are not elected.  They are appointed by the President of the state (who is the official Head of the State but not, as in the U.S., also head of the executive branch of government) upon the recommendation of an Appointment Committee composed of the Minister of Justice, one other member of the Government, the President and two Justices of the Supreme Court, two Members of the Knesset (Israeli Parliament) and two practicing lawyers elected by the Bar Association.  This composition of the Appointment Committee is designed to guarantee a majority of five (out of nine) members, who are not politicians affiliated with either the executive or the legislative branch (that is, the three Justices of the Supreme Court and the two practitioners).  Once appointed, judges hold office until mandatory retirement at the age of seventy.

15.     Israeli law expressly states that during their tenure of office, judges bow in judicial matters to no other authority than that of the Law.  It is not unusual for judges in Israel to rule against the Israeli government or against government officials who are parties to a case, even in crucial and sensitive matters pertaining to state security.  Thus, for instance, the Israeli Supreme Court has ruled that certain interrogation methods involving physical pressure are illegal and may not be applied by the Security Service when interrogating suspected terrorists.[2] Likewise, the Supreme Court has ordered the release of administrative detainees who were found not personally threatening anymore the public safety, even though the state has claimed that such detention is required for other national security reasons.[3]  Also, the Supreme Court has ordered the State to reroute, on human rights grounds, the location, in several areas, of the security barrier erected by it.[4]

16.     Israeli courts are readily available to foreign plaintiffs suing Israeli defendants, provided that the forum of litigation has jurisdiction to adjudicate the controversy under the Israeli law of jurisdiction.  A plaintiff's foreign identity is irrelevant to the Israeli court's jurisdiction to entertain the case.

17.     If Arab Bank (which, I understand, is registered in Jordan and in the Palestinian Authority) brings suit in Israel against the Israeli Banks, it can expect to be treated honestly and fairly by the Israeli judiciary.

---

[2]   *See* HCJ 5100/94 *Public Committee against Torture in Israel v. Government of Israel*, Supreme Court Judgments vol. 53(4), p. 718.

[3]   *See* C.F.H. 7048/97 *Anonymous (Plonym) v. Minister of Defense*, Supreme Court Judgments vol. 54(1), p. 721.

[4]   *See* HCJ 2056/04 *The Council of Beit-Surik Village et al. v. Government of Israel and IDF's Forces Commander in the West Bank*, Tak-Supreme 2004(2), p. 3035 (6.30.2004).

18.     In fact, Arab Bank has previously initiated judicial proceedings on at least one occasion before the Israeli Supreme, District, and Magistrate courts on a civil claim to collect an alleged monetary debt.[5]

## Israeli Courts Apply Foreign Law, Including U.S. Law

19.     Courts in Israel will apply foreign, including U.S. law, in accordance with choice-of-law principles and rules of Israeli private international law (conflict of laws).

20.     In accordance with the common law tradition, foreign law is regarded as a fact which has to be pleaded and proved.  Proof of foreign law generally requires the testimony of experts on the foreign law in question.

21.     For the most part, the choice-of-law standards applied by Israeli courts are cast in the traditional Anglo-American mold.  Thus foreign tort law may be decreed the applicable law in a given case if so indicated by the relevant choice-of-law standard.[6]  The applicable foreign law may certainly encompass norms of civil liability resulting from, for example, breaches of international human rights and other violations of the law of nations.

---

[5]  *See* Civil Motion 364/06, Pad Or 524 (4) 06 (the Supreme Court); Civil Motion 9411/05, Pad Or 267 (30) 05 (the Supreme Court); Civil Motion 6099/05, Pad Or 27 (34) 05 (the Supreme Court); Leave for Civil Appeal 11915/05, Pad Or 888 (13) 06, Pad Or 433 (11) 06 (the Supreme Court); Civil Appeal 1342/04, Pad Or 685 (20) 05 (Nazareth District Court); Civil Motion 4273/04, 4276/03, Pad Or 733 (1) 05, 753 (12) 04 (Nazareth Magistrate Court).

[6]  *See, e.g.*, Civil Action 41/92 *Kimron v. Schenks et al.*, District Court Judgments 1993(3) p. 10 (the plaintiff sought an injunction and damages for alleged copyright violations, and the Jerusalem District Court decreed U.S. copyright law as the applicable law, being the law of the place of the alleged violation of plaintiff's rights); Civil Action 126/92, Motions 947, 948/92 *Druker v. Bank Leumi Trust Co. of New York*, District Court Judgments 1993(2) p. 504 (an American bank sued an Israeli surety to a loan given by the plaintiff, and the Haifa District Court upheld the choice-of-law provision in the relevant contractual document which designated New York law as the applicable law); *and* Civil Appeal 286/70 *Havardi et al. v. Klinski*, Supreme Court Judgments vol. 24(2), 1970, p. 565 (the Israeli Supreme Court refused to enforce an agreement designed to circumvent U.S. customs law, which was relevant because the U.S. was the designated place of performance of the transaction in question).

22.     The causes of action provided by, say, the U.S. Anti-Terrorism Act can thus be applied by an Israeli court, if U.S. law is indicated by the relevant choice-of-law rule as the law governing the case at bar.

23.     Israeli courts may invoke the "public policy" doctrine so as to decline giving domestic effect to a repugnant foreign law that would otherwise be the applicable law under the ordinary choice-of-law directive.  However, Israeli judges are admonished to resort to the "public policy" barrier perceptively and sparingly.  It is only those Israeli domestic socio-legal principles and interests which are distinctive and fundamental that may legitimately override the regular directives of the choice-of-law apparatus and bar an (otherwise applicable) offensive foreign law from local application.

24.     Foreign norms of "economic damages" (including "lost income" or "loss of future earnings," as well as "pain and suffering") and "non-economic damages" (including "loss of consortium," "loss of companionship," and "mental anguish") need not raise before an Israeli forum any "public policy" concerns.

25.     An argument may be raised regarding foreign laws which provide for what could be deemed by an Israeli court as highly excessive punitive damages in civil actions.  But in a case involving a "deep pocket" defendant (such as an international commercial bank), Israeli judges are not likely to incline to resort to "public policy" as a bar to an applicable foreign law norm which provides for punitive damages.

26.     It is my impression that an Israeli court, applying Israeli choice of law principles, and considering Israel's longstanding public policy of punishing and preventing terror and terrorist financing, would not hesitate to apply U.S. damages laws (if considered the applicable law), including punitive damages, against the Israeli Banks, assuming they are found liable.

27.     While Israel has not enacted legislation like the "ATS," which allows for the prosecution of tort claims based on violation of norms of the law of nations, acts of international terrorism may in any event constitute actionable torts, for which contribution is available, under Israel's Civil Wrongs Ordinance.

### Customary International Law Is Part of Israeli Domestic Law

28.     Norms of customary international law are generally regarded as part of Israeli domestic law.  This has been reiterated time and again by Israeli courts, first and foremost by the Israeli Supreme Court.  Thus, for instance, in HCJ 769/02 *Public Committee against Torture in Israel et al. v. Government of Israel et al.*, Pad Or 578 (31) 06 (decision rendered on December 14, 2006), Chief Justice Barak quoted his predecessor Chief Justice Shamgar:  "According to the consistent rulings of this Court, customary international law is part of the law of the land insofar as it has not been overruled by Israeli legislation to the contrary."  *See also* HCJ 2587/04 *Buchris v. Khedera Internal Revenue Officer*, Pad Or 313 (15) 05 (decision rendered on June 23, 2005), where Chief Justice Barak reiterated the principle that rules of customary international law form binding norms of Israeli domestic law.

29.     Thus, to the extent that Arab Bank is claiming that the Israeli Banks have engaged in, or contributed to, acts or omissions that violate customary international law, it is my opinion that such acts or omissions are also likely to be considered violations of Israeli law.

### Israeli Courts Are not Unduly Congested and Resolve Cases Within a Reasonable Time

30.     A contribution claim brought by Arab Bank against the Israeli Banks is likely to be filed in a district court.

31.     Generally speaking, the case load in Israeli courts is not light.  Still, following a reform in the Israeli courts system a few years ago, district courts have become far less congested (due to an expansion of the scope of jurisdiction conferred upon the lower magistrate courts).

32.     According to a formal governmental document entitled "The Judicial Branch in Israel 2005 Report" (published in 2006, in Jerusalem, under the Freedom of Information Law, 1998) during the year 2005 116,733 suits were filed in all five district courts in Israel while 113,753 were closed and 64,351 remained pending.  Thus, Israel's court system is not unduly backlogged.

33.     While the exact duration of the process is scarcely predictable and will depend on a variety of factors, including the *modus operandi* of the parties themselves, I do not believe that the litigation of a contribution claim brought in Israel by Arab Bank, including discovery proceedings, would be more protracted and burdensome than a comparable process in the U.S.

### Israeli Courts Can Readily Subpoena Documents and Witnesses Located in Israel

34.     Chapter nine (rules 102-122) of Israel's Rules of Civil Procedure, 1984, deals with interrogatories and disclosure of documents.  It provides for, *inter alia*, party disclosure by interrogatory and reply by affidavit; it also allows a court, where requested and appropriate, to order a party to disclose documents, and to allow the opposing party to examine such documents.

35.     Chapter fourteen ("The Hearing"), Article Five ("Summoning Witnesses") of Israel's Rules of Civil Procedure prescribes rules regarding, *inter alia*, summoning witnesses, surety for costs of witnesses, summonses to produce documents, fines or imprisonment for non-compliant witnesses, and remuneration and costs of witnesses.

10

36.     These rules, together, enable Israeli courts to maintain effective supervision and control over the discovery and evidentiary processes, and allow Israeli courts to strive to uncover the full truth at trial.

37.     I believe that in light of these rules, were Arab Bank's contribution claims against the Israeli Banks tried in Israel, the Israeli court would have no difficulty ensuring that these banks produce all appropriate documents and witnesses.

### Israeli Courts Can Also Enforce Any Judgment Against the Third Party Defendants

38.     Israel's Execution Law, 1967, comprises eighty-eight sections providing for, *inter alia*, the appointment of execution officers, application for execution, service of warning and judgment, taking of proceedings, detention to prevent interference with execution, prevention of departure from Israel, searches, attachment of movable property, attachment of immovable property, attachment of property in the hands of a third party, collection of property (including appointment and powers of receiver), specific performance (including surrender of property), investigation and imprisonment.

39.     This law effectively allows an Israeli court to enforce its judgments against any party found liable – including of course any bank -- with property or personnel located in Israel. I believe that an Israeli court would be able and willing to enforce any judgment against the Israeli Banks.

### Conclusion

40.     In the above legal opinion, I have reviewed Israeli law as it pertains to the adequacy of Israel as an alternative forum for Arab Bank's claims against the Israeli Banks.

41.     In my opinion, Israel is an adequate forum for Arab Bank's claims for three main reasons, which I may group in three categories:  substantive, jurisdictional, and procedural.

11

42.     Substantively, Israeli courts recognize contribution claims, apply foreign, including U.S., law, and recognize Customary International Law as part of Israeli domestic law.

43.     Jurisdictionally, Israeli courts have jurisdiction over Bank Hapoalim B.M., Israel Discount Bank Ltd. and Mercantile Discount Bank Ltd. because of these entities' incorporation, headquartering, or presence in Israel.

44.     Procedurally, Israeli courts are independent and fair, and provide due process to all parties regardless of nationality or political affiliation. Israeli courts are not unduly congested and they resolve cases within a reasonable time span. Israeli courts can readily subpoena documents and witnesses located in Israel, and can enforce judgments against any litigant located in, or owning property in, Israel.

45.     For all of these reasons, I believe that Arab Bank would have no difficulty obtaining a full and fair trial – and enforcing any judgment associated therewith – in Israel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _30_ August, 2007, in _Tel Aviv_, Israel.

_A. Shapira_
Amos Shapira

# EXHIBIT 1

**AMOS SHAPIRA**, M. Jur., M.C.L., J.S.D.

## CURRICULUM VITAE

| | |
|---|---|
| Date of birth: | 17th January, 1937 |
| Place of birth: | Israel |
| Nationality: | Israeli |
| Residence: | 5 Brazil Street., Flat No.25, Ramat Aviv, Tel Aviv 69460, Israel |

### Education

| | |
|---|---|
| 1956-1959 | Studies, Faculty of Law, Hebrew University of Jerusalem, Israel |
| 1962 | Master of Law, with distinction (Hebrew University) |
| 1962-1963 | Studies, School of Law, Columbia University, New York City, U.S.A. |
| 1963 | Master of Comparative Law (Columbia University) |
| 1965-1968 | Studies, School of Law, Yale University, New Haven, U.S.A. |
| 1968 | Doctor of Science of Law (Yale University) |

### Experience

| | |
|---|---|
| 1959-1961 | Apprenticeship |
| 1961 | Admitted to Israeli Bar |
| Since 1968 | Faculty of Law, Tel Aviv University, Israel |
| | 1968 - Lecturer |
| | 1971 - Senior Lecturer (with tenure) |
| | 1974 - Associate Professor |
| | 1984 - Full Professor |
| 1974-1975 | Visiting Senior Fellow and Lecturer, School of Law, Yale University, New Haven, U.S.A. |
| Summer 1975 | Visiting Professor, Georgetown University Law Center, Washington D.C., U.S.A. |

January 2006

2

| | |
|---|---|
| 1979-1980 | Academic Chairman, Tel Aviv University Overseas Students Program |
| 1980-1985 | Dean, Tel Aviv University Faculty of Law |
| 1983, 1985 | W.G. Hart Senior Visiting Fellow, Faculty of Laws, Queen Mary College, University of London, England |
| Since 1985 | Incumbent of the Lubowski Chair of Law & Biomedical Ethics |
| 1986 | Diener Institute Visiting Professor, Cardozo School of Law, Yeshiva University, New York City, U.S.A. |
| 1987 | Altmayer Visiting Professor, School of Law, Tulane University, New Orleans, U.S.A. |
| 1988 | Julius Silver Visiting Scholar in Law, Science and Technology, School of Law, Columbia University, New York, U.S.A. |
| 1989 | Visiting Professor, Faculty of Law, Hong Kong University |
| | Visiting Professor, Cardozo School of Law, Yeshiva University, New York City, U.S.A. |
| | Senior Visiting Scholar, Institute of Advanced Legal Studies, University of London, England |
| | Lecturer in Private International Law, The Hague Academy of International Law |
| 1990 | Visiting Professor, School of Law, University of Miami, Miami, U.S.A. |
| 1991-1997 | Director, The Cegla Institute for Comparative and Private International Law, Tel Aviv University |
| 1991 - | Editor, Tel Aviv University Studies in Law |
| 1992, 1994, 1996,1998, 2000, 2002, 2004, 2006 | Visiting Professor, Brooklyn Law School, New York City, U.S.A. |
| 1994 | Visiting Professor, Faculty of Law, Graz University, Austria |
| 1997-1999 | Director, The Minerva Center for Human Rights at Tel Aviv University |
| 2000 - | President, The Appeals Disciplinary Tribunal of the Tel Aviv University Academic Staff. |
| 2003, 2005 | Commerzbank Visiting Professor of Law, Bucerius Law School, Hamburg, Germany |

January 2006

3

| Current | Counselling;   participation in law reform and legislation projects; service on public boards; contributions to the Israeli mass media and appearances on public platforms in Israel, Europe and North & South America on subjects related to law and community affairs. |

## Honors, Awards and Grants

The Hebrew University, Jerusalem

Institute of International Education, U.S.A.

Columbia University, U.S.A.

Yale University, U.S.A.

Israel Foundations Trustees, Tel Aviv

Fritz Naphtali Foundation, Tel Aviv

Max Planck Institute for Foreign and Private International Law, Hamburg, Germany

Pinhas Rosen Fund, Jerusalem

Queen Mary College, University of London

United States - Israel Educational Foundation

The British Council

Distinguished Professor, La Universidad Nacional Autonoma de Mexico  (October 1987)

Giztelter Fund, First Prize for Research in Medicine and Law (Tel Aviv, January 1992)

Inns of Court Fellowship, Institute of Advanced Legal Studies, London.

Zteltner Prize for Excellence in Legal Research.

## Membership

Member, Tel Aviv University Executive Council, Senate, Appointments Committee,
        Board of Governors and Committee for Academic Planning

Former Chairperson, Tel Aviv University Biomedical & Behavioral Research in Humans
        Review Board

Member, Board of Trustees, The Jaffee Center for Strategic Studies

Chair, the Council for Higher Learning Professorial Appointments Committee in Social
        Sciences, Business and Law

January 2006

4

Member, Israel Association for the United Nations

Former Deputy President, Member of the Executive Board, Israel Press Council

Member, Israel Bar Association

Member, Executive Board of the International Association of Jewish Lawyers and Jurists

Vice President, The German-Israeli Jurists Association

Chair, Hospital Ethics Committee, the Tel Aviv Sourasky Medical Center

Member, Human Experimentation National Review Board

Member, Genetic Human Experimentation National Review Board

Member of the Executive Board, Medical Ethics Society

Member, International Law Association, Committee on International Civil Litigation and
the Interests of the Public

Member, American Law Institute (ALI)

Associate Member, International Academy of Comparative Law

Member, American Society of Law & Medicine

Member of the International Board of Editors, American Journal of Law & Medicine

International Fellow, Institute of Society, Ethics & the Life Sciences, the Hastings Center

Associate Member, The Kennedy Institute of Ethics

International Advisor to the Editors, Medical Humanities Review, Institute for the
Medical Humanities, University of Texas Medical Branch

Member of the Executive Board, International Association of Law, Ethics & Science

Member of the Reading Board, International Journal of Bioethics

Former Member of the Visiting Committee for the Law School, University of Miami

Member of the Executive Board, The New Israeli Opera

Former Acting Chair, Member of the Board of Directors, Tel Aviv Performing Arts
Center

Member of the Executive Board, The Israel Democracy Institute

Member, Friends of the Hamburg Max Planck Institute for Foreign and Private
International Law, Germany

Fellow of the Society for Advanced Legal Studies, London, England

Member, Bioethics Advisory Committee of the Israel National Academy of Sciences and
Humanities

Member, Bioethics National Council

Member, Advisory Committee on the Treatment of Terminal Patients, Ministry of Health

Vice President of the Scientific Committee, the International Bioethics Society (SIBI)

January 2006

5

Member of the Editorial Board, Bioetica, the Journal of the International Bioethics
Society

Member of the Editorial Board, Res Publica, the Journal of the U.K. Association for
Legal & Social Philosophy

Member, the Academic Committee of the Herzog Institute of Media, Society and Politics,
Tel Aviv University

Member, Steering Committee on Biotechnological Research in the Era of Terrorism, the
Israel National Academy of Science and the National Security Council

January 2006

- 1· -

**AMOS SHAPIRA**, M. Jur., M.C.L., J.S.D.

LIST OF SELECTED PUBLICATIONS

A.      BOOKS

   1       *The Interest Approach to Choice of Law*, (English), Martinus
           Nijhoff, The Hague, pp. XI, 273 (1970).

   2.      *Legal Aspects of the Arab-Israel Conflict - Selected Documents,
           Articles and Other Materials*, (English), Tel Aviv University
           Students Union Publishing House, pp. 410 (1971).

   3       A. Shapira & B. Bracha, *Fundamentals of Public Law in Israel*,
           (Hebrew), Defense Ministry Publishing House, pp. 78 (1978).

   4.      M. Shava and A. Shapira, Readings in Private and Interreligious
           International Law, (Hebrew and English), Ramot Mishpat, 7 parts,
           pp. 2666 (1992).

   5.      A Shapira & K. DeWitt-Arar, eds. *Introduction to the Law of
           Israel*, (English), Kluwer Law International, The Hague, pp. xxix,
           424 (1995).

   6.      A. Shapira & M. Tabory, eds., *New Political Entities in Public and
           Private International Law with Special Reference to the
           Palestinian Entity*, (English), Kluwer Law International, The
           Hague, pp. VIII, 430 (1999).

B.      ARTICLES

   1       "Choice-of-Law in the Area of Commercial Contracts in Modern
           American Conflict of Laws", (Hebrew) *Hapraklit* (The Quarterly
           Law Journal of the Israeli Bar Association and the Hebrew
           University Faculty of Law), Vol. 20, pp. 149-154, 248-256 (1964).

   2.      "The Security Council Resolution of November 22, 1967 - Its
           Legal Nature and Implication", (English), *Israel Law Review*, Vol
           4, pp 229-241 (1969), reproduced in Moore, ed., *The Arab-Israeli
           Conflict*, Vol. 2, 1974, pp. 566-578

- 2 -

3.   "Local and Foreign Jurisdiction Exercised by the Same Forum: The Anomaly of the Greek-Orthodox Tribunal in Jerusalem", (Hebrew), *Hapraklit*, Vol. 25, pp. 456-461 (1969).

4    "On the Legal Nature of the Security Council Resolution of November 22, 1967", (Hebrew), *International Problems* (Quarterly of the Israeli Institute of International Affairs), Vol. 7, pp. 9-17 (1969).

5.   "More on Local and Foreign Jurisdiction Exercised by the Same Forum", (Hebrew), *Hapraklit*, Vol. 26, pp. 34-36 (1970).

6.   "A Transatlantic Inspiration: The 'Proper Law of the Tort' Doctrine", (English), *Modern Law Review*, Vol. 33, pp. 27-33 (1970).

7.   "Protection of Private Interests in the Choice-of-Law Process: The Principle of Rational Connection between Parties and Laws", (English) *Southwestern Law Journal*, Vol. 24, pp. 574-592 (1970).

8.   "The Six-Day War and the Right of Self-Defense", (English), *Israeli Law Review*, Vol. 6, pp. 65-80 (1971), reproduced in Moore, ed., The Arab-Israeli Conflict, Vol. 2, 1974, pp. 205-220.

9.   "Torts in the Conflict of Laws: From Mechanical Rules to a Functional Approach", (Hebrew), *Tel Aviv University Law Review*, Vol. 1, pp. 96-124 (1971).

10   "Choice of Law in Torts - A Draft Bill", (Hebrew), *Tel Aviv University Law Review*, Vol. 2, pp. 203-206 (1972).

11.  "Legislation - Choice of Law in Torts", (English), *Israel Law Review*, Vol. 7, pp. 557-560 (1972), reproduced in *Reese & Rosenberg, Conflict of Laws - Cases and Materials*, 6th ed., 1975 supplement, pp. 91-94.

12.  "Custody of Children - 'Welfare of the Child' and Recognition of Foreign Judgments", (Hebrew), *Mishpatim*, Vol. 4, pp. 291-307 (1972).

13.  "'Manna for the Entire World' or 'Thou Shalt Love Thy Neighbor as Thyself - Comment on Neumeier v. Kuehner", (English), *Hofstra Law Review*, Vol. 1, pp. 168-177 (1973).

- 3 -

14. "Recognition and Enforcement of Foreign Judgments", (Hebrew), 2 parts, *Tel Aviv University Law Review*, Vol. 4, pp. 509-541 (1975); Vol. 5, pp. 38-59 (1976).

15. "'Grasp All, Lose All': On Restraint and Moderation in the Reformulation of Choice of Law Policy", (English), *Columbia Law Review*, Vol. 77, pp. 248-270 (1977).

16. A. Shapira and K. Siehr, "The Jundeff Affair - Comparative Remarks on International Child Kidnapping and Judicial Co-operation", (English), *Netherlands International Law Review*, Vol. 25, pp. 3-23 (1978).

17. "Recognition and Enforcement of Foreign Judgments *In Personam* in Israel", (English), *Tel Aviv University Studies in Law*, Vol. 3, pp. 171-208 (1977).

18. Shapira & Drori, "The Autonomy in Judea, Samaria and the Gaza District - Legal Aspects", (Hebrew), in *The Autonomy - Problems and Possible Solutions*, pp. 180-202 (Center for Strategic Studies, Tel Aviv University, August 1979); also published in English in Paper No. 8, pp. 177-193, January 1980 (Center for Strategic Studies, Tel Aviv University, January 1980).

19. "The Enforcement and Recognition of Foreign Money Judgments in Israel", (English), *Middle East Executive Reports*, Vol. 2, No. 11, pp. 3, 18-21 (November 1979).

20. "Reflections on the Autonomy: The Camp David Accords and the Obligation to Negotiate in Good Faith", (English), in Y. Dinstein, ed., Models of Autonomy, pp. 283-287 (Transaction Books, 1981).

21. "L'Obligation Alimentaire en Droit International Prive en Israel", (French), in *L'Obligation Alimentaire en Droit International Prive*, Vol. 1, pp. 244-266 (Institut de Recherches Juridiques Comparatives, Centre National de la Recherche Scientifique, Paris, France, 1983).

22. "Parivate International Law and Scope-Delination of Legislation in the Israeli Legal System", (English), *Netherlands International Law Review*, Vol. XXXI, pp. 73-91 (1984).

- 4 -

23. "Comments on the Nature and Purpose of Private International Law", (Hebrew), *Tel Aviv University Law Review*, Vol 10, pp. 275-295 (1984).

24. "Private International Law Aspects of Child Custody and Child Kidnapping Cases", (English), *Recueil des Cours* (Hague Academy of International Law), Vol. 214, pp. 131-250 (1989-II).

25. "Comment: The Erga Omnes Applicability of Human Rights", (English), in *Archiv Des Volkerrechts*, Vol. 30, pp. 22-26 (J.C.B. Mohr Tubingen, Germany, 1992).

26. "Private International Law", (English), in A. Shapira & K. DeWitt-Arar, eds., *Introduction to the Law of Israel*, pp. 361-382 (Kluwer Law International, The Hague, 1995).

27. "Territorialism, National Parochialism, Universalism and Party Autonomy: How Does One Square the Choice-of-Law Circle?", (English), *Brooklyn Journal of International Law*, Vol. 26, p. 199-209 (2000).

28. "Tort Choice of Law in Israel: Putting Order in a Methodological Chaos", (English), in J. Basedow, I. Meier, A.K. Schnyder, T. Einhorn & D. Ginsberger, eds., *Private Law in the International Arena (Liber Amicorum Kurt Siehr)*, pp. 685-702 (T.M.C. Asser Press, The Hague, 2000).

29. "Foreign Same-Sex Adoption and Domestic Public Policy: Recognition of Foreign Decrees as Playground for Domestic Timid Reformers", (English), in J.A.R. Nafziger & S.C. Symeonides, eds., *Law and Justice in a Multistate World (Essays in Honor of Arthur T. Von Mehren)*, pp. 219-228 (Transnational Publishers, Inc., New York, 2002).

30. "Tort Choice of Law in Israeli Private International Law: From Chaos to Methodological Consistency", (Hebrew), in *Sefer Shamgar*, Vol. 3, pp. 69-91 (The Bar Association Publishing House, Tel Aviv, 2003).