UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

COURTNEY LINDE, et al().,

    Plaintiffs,

-against-

ARAB BANK, PLC,

    Defendant.

---

Case No. CV 04 2799 (BMC)(VVP) *and all related cases*\*

---

**PLAINTIFFS' JOINT MOTIONS *IN LIMINE***

---

\* *Litle, et al. v. Arab Bank, PLC*, No. CV-04-5449 (BMC)(VVP); *Almog, et al. v. Arab Bank, PLC*, No. CV-04-5564 (BMC)(VVP); *Coulter, et al. v. Arab Bank, PLC*, No. CV-05-365 (BMC)(VVP); *Bennett, et al. v. Arab Bank, PLC*, No. CV-05-3183 (BMC)(VVP); *Roth, et al. v. Arab Bank, PLC*, No. CV-05-3738 (BMC)(VVP); and *Weiss, et al. v. Arab Bank, PLC*, No. CV-06-1623 (BMC)(VVP).

# TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*Arlia v. Lively*,
   474 F.3d 46 (2d Cir. 2007)......................................................................................................2

*Bachir v. Transoceanic Cable Ship Co.*,
   No. 98-Civ-4625 (JFK), 2002 WL 413918 (S.D.N.Y. March 15, 2002)..................................7

*Brooks v. Cook*,
   938 F.2d 1048 (9th Cir. 1991) ................................................................................................7

*Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*,
   2005 WL 1026515 (S.D.N.Y. May 2, 2005) ..................................................................... 1-2

*Ebert v. City of New York*,
   No. 04 Civ. 9971(LMM), 2006 WL 3627103 (S.D.N.Y. June 26, 2006).................................5

*Eichel v. New York Central R.R.*,
   375 U.S. 253 (1963)..................................................................................................................7

*HBE Leasing Corp. v. Frank*,
   22 F.3d 41 (2d Cir. 1994) .........................................................................................................4

*Jean-Laurent v. Hennessy*,
   840 F. Supp. 2d 529 (E.D.N.Y. 2011) .....................................................................................1

*King v. City of New York*,
   No. 06-civ-6516, 2007 WL 1711769 (S.D.N.Y. June 13, 2007)...............................................5

*New York Mercantile Exchange v. Verrone*,
   No. 96-Civ-8988 (SAS), 1998 WL 811791 (S.D.N.Y. Nov. 19, 1998)....................................7

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996).......................................................................................................1

*Stanley v. Bertram-Trojan, Inc.*,
   868 F. Supp. 541 (S.D.N.Y. 1994)...........................................................................................5

*Theatre Techniques, Inc. v. United Scenic Artists, Local 829 of Broth. of Painters and Allied Trades, AFL-CIO*,
   No. 76-Civ-5417, 1980 WL 2151 (S.D.N.Y. June 27, 1980) ...................................................4

*United States v. Beech-Nut Nutrition Corp.*,
   871 F.2d 1181 (2d Cir. 1989)...................................................................................................2

*United States v. Gelzer*,
   50 F.3d 1133 (2d Cir. 1995) .......................................................................................................2

**FEDERAL STATUTES**

18 U.S.C. §2333(a) .......................................................................................................................4

**RULES**

Fed. R. Evid. 104 ..........................................................................................................................1

Fed. R. Evid. 401 ......................................................................................................................1, 2

Fed. R. Evid. 402 ................................................................................................................. passim

Fed. R. Evid. 403 ................................................................................................................. passim

**OTHER AUTHORITIES**

2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 401.04[2][a],
   at 401-19 (2d ed. 2006) ............................................................................................................2

Plaintiffs hereby submit this omnibus motion and memorandum of law, moving the Court *in limine* for evidentiary rulings pursuant to Fed. R. Evid. 104. The motions set forth below request that the Bank be precluded from offering evidence or argument at trial regarding:

- Contributory Negligence
- Treble Damages
- Collateral Sources
- FBI Investigations and Plaintiffs' Contacts With the FBI
- How Individual Plaintiffs Learned About, or Joined, the Lawsuit
- Explanations of the Earlier Liability Verdict
- Any Alleged Geopolitical Consequences Related To A Verdict Against Defendant
- Other Actual or Potential Lawsuits
- What Plaintiffs Believe They Should Receive As Compensation For Their Injuries

Specifically, Plaintiffs respectfully request that the Court rule inadmissible certain evidence and preclude Defendant from eliciting testimony about or referring in the presence of the jury to those matters set forth herein. The principal bases for Plaintiffs' motions are lack of relevance, pursuant to Fed. R. Evid. 401 and 402, and unfair prejudice, pursuant to Fed. R. Evid. 403. Where another Rule of Evidence justifies preclusion, Plaintiffs cite that Rule or prior ruling of the Court in the motion on the particular issue.

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (*citing, inter alia, Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted). "A motion *in*

*limine* to preclude evidence asks the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2005 WL 1026515, *4 (S.D.N.Y. May 2, 2005).

Rule 401 of the Federal Rules of Evidence provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "If an item of evidence tends to prove a fact that is of consequence to the determination of the action, it is relevant. If it does not tend to prove a material fact, it is irrelevant." *Arlia v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (*quoting* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 401.04[2][a], at 401-19 (2d ed. 2006)). Evidence that is not relevant is not admissible. Fed. R. Evid. 402.

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This Rule grants the district courts "broad discretion to exclude even relevant evidence if its probative value is substantially outweighed ..." by the factors listed in the Rule. *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989). Rule 403's "unfair prejudice" means that the evidence "involves some adverse effect ... beyond tending to prove the fact or issue that [otherwise] justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995).

1.  **The Bank Should Be Precluded From Raising Issues Relating To Contributory Negligence[1]**

The Bank asked many questions in the Plaintiffs' depositions that can only be explained as attempts to establish a foundation for the jury to improperly consider issues of contributory negligence – that, somehow, the Plaintiffs should receive less compensation because they assumed some risk. For example, Defendant has designated deposition testimony by Chana Freedman about family members allegedly owning guns, her knowledge of terrorist attacks in the vicinity of her home, and her perception of the safety of her community.[2] CF 2015 pp. 62:18-66:20. This kind of questioning has no relevance in an Anti-Terrorism Act lawsuit, and it would be highly and unfairly prejudicial and confusing to the jury. The Bank should be precluded from raising these issues at trial.

Defendant's designations of testimony seem to insinuate, for example, that because Howard Goldstein chose to live in Israel, may have owned a gun, and chose to drive in a car in the "West Bank," from the "settlement"[3] called Eli, an area in which there had been other terrorist attacks, the Goldstein Plaintiffs assumed the risk of their own injuries. The same would

---

[1]   Citations to transcripts herein use the following system: XX 20__, where XX are the initials of the deponent and the number is the year in which the deposition took place. The following Plaintiff witnesses are cited: Eugene Goldstein (EG), Lorraine Goldstein (LG), Michael Goldstein (MG), Richard Goldstein (RG), Chana Freedman (CF), and Barbara Goldstein Ingardia (BI). The following non-plaintiff witnesses are cited: Richard Ingardia (RI – husband of Barbara Ingardia), Naftali Freedman (NF – husband of Chana Freedman), Anne Goldstein (AG - wife of Richard Goldstein), Gail Goldstein (GG – former wife of Michael Goldstein), and Michal Honickman (MH – widow of Howard Goldstein).

[2]   Defendant's questioning of other Plaintiffs on these issues includes those relating to:

  o  the family's safety concerns about Howard Goldstein's move to Israel (EG 2008, pp. 85:7-10; 82:24 – 83:1; RG 2008, pp. 65:9 – 68:15; RG 2015, pp. 11:7 – 12:9; MG, pp. 30:16 – 23; AG, p. 36);
  o  whether Howard Goldstein carried a gun in Israel (EG 2007, pp. 18:18 – 20; 41:17 – 21; RG 2015, p. 117:4 – 21; RG 2008, pp. 42:20 – 43:7; 54:8 – 9; CF 2008, p. 33; CF 2015, pp. 60, 63; BI 2015, p. 139); and
  o  other attacks near the Eli settlement (CF 2015, p. 63).

[3]   Plaintiffs do not object to the use of the terms "West Bank" or "Settlement" *per se*, but to the extent that Arab Bank intends to use those terms as a means to inject political commentary concerning the Arab-Israeli conflict or Israeli occupation of the West Bank, this should be excluded for the same reasons the Court excluded these same arguments and subjects during the liability phase of the trial.

3

be true of any insinuation that riding on a public bus in Israel during this time period was inherently dangerous.

### 2. The Bank Should Be Precluded From Mentioning Treble Damages In Front Of The Jury

Defendant should be precluded from mentioning the words or concept of "treble damages" to the jury, pursuant to FRE 402 and FRE 403. The Anti-Terrorism Act provides that the Court "shall" treble any damages awarded to a successful plaintiff by the jury. 18 U.S.C. §2333(a). This is a purely arithmetic exercise by the district judge, multiplying a jury's damages award by a factor of three. The jury plays no role, and has no discretion in this process. There is no legitimate purpose in permitting a defendant to mention treble damages to a jury, and doing so greatly risks prejudicing or confusing the jury, and potentially undermining Congress's purpose in enacting the treble damages provision.

Federal courts have consistently ruled that it is improper to mention to a jury the prospect of the court's trebling of damages. "Reference to treble damages and attorneys fees is irrelevant to the jury questions of liability and damages and may tend to confuse or prejudice a jury into reducing its eventual award, thus frustrating Congress's goal of deterring improper conduct by assessing treble damages and attorneys fees." *HBE Leasing Corp. v. Frank*, 22 F. 3d 41, 45 (2d Cir. 1994); *id.* ("Every authority ... upholds excluding references to trebling ..."); *id.* at 46 ("courts have uniformly concluded that mentioning treble damages and attorneys fees to the jury is improper."); *id.* ("cornucopia of case law" makes evident that "juries should not be made aware of trebling provisions"). See also, *Theatre Techniques, Inc. v. United Scenic Artists, Local 829 of Broth. of Painters and Allied Trades, AFL-CIO*, No. 76-Civ-5417, 1980 WL 2151, *2 (S.D.N.Y. June 27, 1980) ("no mention should be made of the power in the court to treble any

4

damages that may be awarded to the plaintiff, and to award counsel fees in such event. These matters are of no concern to the jury and should not intrude into their deliberations.").

### 3. The Bank Should Be Precluded From Introducing Evidence Of Collateral Sources

Courts bar introduction of any evidence of public and private collateral sources of compensation, reimbursement, and disability insurance or benefits payments in causes of action brought under federal law. *Stanley v. Bertram-Trojan, Inc.*, 868 F. Supp. 541, 543 (S.D.N.Y. 1994) ("The collateral source rule applies as a matter of federal law ..."); *Ebert v. City of New York*, No. 04 Civ. 9971(LMM), 2006 WL 3627103 (S.D.N.Y. June 26, 2006) (in federal statutory action, "federal law governs the issue of the application of the collateral source rule"). "The collateral source rule is a substantive rule of law that bars the reduction of an award by funds or benefits received from collateral or independent sources. It applies to cases governed by federal law...." *King v. City of New York*, No. 06-civ-6516, 2007 WL 1711769, *1 (S.D.N.Y. June 13, 2007). "The rationale for the rule arose out of concern that allowing the introduction of collateral sources of income would influence juries in their determination of a tortfeasor's liability. The collateral source rule addresses this potential bias and *effectively forces the tortfeasor to absorb the total cost of the resulting harm*." *Id*. (Emphasis added.)

While expressing his agreement with Plaintiffs that the collateral source rule barred Defendant from broad discovery on the issue, Magistrate Judge Pohorelsky nevertheless permitted some limited discovery, through "specifically tailored and narrow requests" about circumstances where a plaintiff may have been denied a disability claim. ECF. No. 353, April 19, 2007 Tr. at 3. In so doing, however, the Magistrate Judge excused Plaintiffs from having to gather and produce any other collateral source-related materials. *Id*. On January 21, 2015, this Court further restricted Defendant's inquiry to *applications* for disability benefits if, and only if,

a plaintiff claimed disability based on mental health status within three years of the attack with respect to which that plaintiff claims injury. January 21, 2015 Tr. at 7. As with the Magistrate Judge's prior order, Your Honor expressed doubt that this line of inquiry would yield anything relevant to the issues to be considered by the damages jury. *Id.*

However, notwithstanding the expressed reservations and clear limits imposed by the Court, Defendant is poised to raise this issue again in an effort to impermissibly plant seeds in the jurors' minds that there is some basis for reducing damages due to payments from third-party sources such as the National Insurance Institute of Israel (Bituach Leumi) and the U.S. Department of Justice's International Terrorism Victim Expense Reimbursement Program (ITVERP).

For instance, Defendant has now designated as exhibits for the damages trial numerous Bituach Leumi and ITVERP documents. *See, e.g.* Defendant Arab Bank's Damages Trial Exhibit List dated July 16, 2015, Exhs. DX-D-0012; DX-D-0020; DX-D-0023; DX-D-0028; DX-D-0049; DX-D-0057; DX-D-0136; DX-D-0138; DX-D-0213; DX-D-0221; DX-D-0235; DX-D-0236; DX-D-0239; DX-D-0288. These documents all expressly concern government and private insurance benefits and reimbursements and are, thus, impermissible collateral source evidence.

That Defendant's purpose is improper is further reflected in lines of questioning it pursued in Plaintiffs' depositions, including testimony it has designated for the damages trial. *See, e.g.*, EG 2015 pp. 118:18 – 134:4 (description of payments received from Bituach Leumi and shown form assessing his injuries); 135:6 – 142:5 (references to expense reimbursement through ITVERP). *See also* EG 2007 pp. 47:16 – 50:22; LG 2015 pp. 150:1-13; 155:7-24; 158:15 – 165:1 (dental expenses reimbursed by Ethos and ITVERP); 165:15 – 167:7; LG 2007 pp. 38:14 – 39.21; 52:22-58:21; RG 2015 pp. 87:23 – 88:17; 92:6 – 17; RG 2008 pp. 62:7 –

63:16; 68:19 – 69:4; MG 2015 pp. 82:24 – 83:10; 93:11 – 20; MG 2008 pp. 25:14 – 27:6; March 17, 2015 Deposition of Yossef Cohen at pp. 209:10-209:17; 210:5-210:7; 210:9-210:12; 213:2-213:3; 213:5-213:8, 215:16-216:10; 218:16-218:18; 218:20-218:22; 220:21-220:23. Defendant also inquired about collateral sources in interrogatories it propounded to Plaintiffs. *See, e.g.*, Defendant's First Set of Interrogatories to Plaintiff Eugene Goldstein, No. 13.

Plaintiffs respectfully submit that the Court must exclude collateral source evidence at this damages phase because, "[t]he collateral source doctrine generally precludes benefits received from third-parties from being considered in determining the amount of damages." *Bachir v. Transoceanic Cable Ship Co.*, No. 98-Civ-4625 (JFK), 2002 WL 413918, *6 (S.D.N.Y. March 15, 2002). Collateral source evidence has no relevance to a jury's determination of actual damages, because it is not within the province of the jury to offset or reduce damages based on payments by third-parties. *New York Mercantile Exchange v. Verrone*, No. 96-Civ-8988 (SAS), 1998 WL 811791, *1 (S.D.N.Y. Nov. 19, 1998). "It has long been recognized that evidence showing that [a party] is insured creates a substantial likelihood of misuse. Similarly, we must recognize that [a plaintiff's] receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact." *Eichel v. New York Central R.R.*, 375 U.S. 253, 255 (1963). Therefore, collateral source evidence is inadmissible both because it lacks relevance (FRE 402), and would be unfairly prejudicial (FRE 403). *Brooks v. Cook*, 938 F.2d 1048 (9th Cir. 1991).

This argument applies equally to assessments by Bituach Leumi of disability percentages assigned to various Plaintiffs. Bituach Leumi assigns disability percentages with a particular purpose in mind – to limit its exposure for collateral source insurance payments. These disability percentages assigned to Plaintiffs represent a backdoor method by which the Defendant will seek to introduce payments received by these Plaintiffs from Bituach Leumi – the Israeli National

Insurance Institute – to somehow offset the Bank's damages liability or to confuse the jury with regard to how to assess damages. Absent considerable evidence and testimony concerning Bituach Leumi's methodologies and objectives, and analysis of its data, the information has no meaning for the jury beyond introducing the existence of a collateral source. Thus, in addition to jury confusion and undue prejudice (FRE 403), this evidence also lacks relevance (FRE 402). The jury will be presented with considerable evidence concerning Plaintiffs' disabilities, from which it will make its own, independent assessment. Any evidence of insurer assessments should, therefore, be excluded.

4. **The Bank Should Be Precluded From Offering Evidence Concerning FBI Investigations And Plaintiffs' Contacts With The FBI**

Defendant also signals its intent to inquire about FBI investigations into attacks. Def. Ex. List, DX-D-0259 (Letter from FBI Office of Victim Assistance to Eugene and Lorraine Goldstein regarding status of investigation). The only other conceivable use Defendant could make of this document or a discussion of it is to introduce collateral source information – the Office of Victim Assistance is the DOJ office that administers the ITVERP. For the same reasons Defendant must be precluded from offering any direct evidence of collateral sources, it must likewise be precluded from opening that same door indirectly. All references to the status of the FBI's investigations must therefore be precluded from the damages trial.

5. **The Bank Should Be Precluded From Offering Evidence Concerning How Individual Plaintiffs Learned About, Or Joined, The Lawsuit**

At various points during the Plaintiffs' depositions, Defendant has asked questions regarding how they learned of, or joined, this lawsuit. This line of questioning has no probative value for a jury assessing damages in this case and is therefore inadmissible under Rule 402. Its only purpose is to insinuate that the Plaintiffs had no prior personal knowledge of Arab Bank's

conduct and that the case is "lawyer-driven." Introduction of this subject in any form would clearly serve to confuse the jury in violation of FRE 403 by introducing a completely irrelevant issue into its deliberations.

### 6. The Bank Should Be Precluded From Offering Any Evidence To Explain the Earlier Liability Verdict Of The Jury In The Damages Phase Of The Trial

Defendant has made it clear with the submission of the expert report of its putative expert witness Dr. Marc Sageman, that it will seek to present evidence in the upcoming damages trial that purports to explain and minimize to the jury the earlier liability verdict against it.[4] This would include reference to Hamas's "primary responsibility" for the terrorist attacks, reference to other responsible parties or insinuations that the liability verdict will be appealed or overturned. *Any* means by which defense counsel attempts to characterize, disparage or explain the liability verdict during the damages trial would be unfairly prejudicial (FRE 403) and usurp the Court's role in instructing the jury on the law.

### 7. The Bank Should Be Precluded From Introducing Evidence, Eliciting Testimony Or Arguing About Any Geopolitical Consequences Related To A Verdict Against It

There have been, at various stages of this litigation, indications that Defendant may through evidence, testimony or argument invite the jury, in determining damages, to consider possible adverse geopolitical consequences of a verdict against Arab Bank. Such purported consequences might include impairing the Middle East peace process, damaging the Kingdom of Jordan's economy, or otherwise being a destabilizing force in that part of the world. Clearly, there is nothing about these matters even remotely relevant to the jury's task of determining Plaintiffs' damages, and just as clearly the only conceivable use would be to unfairly prejudice,

---

[4] Plaintiffs have separately moved to strike Dr. Sageman's report and incorporate all the arguments relating to the briefing of that motion herein. ECF No. 1285.

inflame or confuse the jury. At the July 30, 2013 pre-trial conference (pp. 91-92), this Court ruled:

> Argument that a verdict against the defendant would have adverse geopolitical consequences, . . . I think the plaintiffs said one of the defendant's experts was going to opine on that. That is not going to be allowed. . . . How is that possibly relevant to whether there's been a statutory violation? You know, if there's a statutory violation, the chips will fall where they will.

The chips have now fallen. All that remains is for a jury to decide facts relevant to the calculation of Plaintiffs' damages. Therefore, pursuant to FRE 402 and 403, we ask the Court to preclude any speculation in front of the jury by Defendant concerning the geopolitical consequences of a damages verdict against it.

### 8. The Bank Should Be Precluded From Mentioning Or Introducing Evidence Of Other Actual Or Potential Lawsuits

Defendant must be precluded from introducing to the jury any facts, argument or evidence concerning any other lawsuits any Plaintiffs either have brought, considered bringing, or could have brought. *See*, *e.g.*, EG 2015 pp. 203:23-204:23; EG 2007 pp. 52:10 – 55:7; LG 2007 pp. 44:19 – 45:15; RG 2015 pp. 92:22 – 93:12; RG 2008 pp. 38:7 – 41:12 - 43:7; MG 2008 pp. 17:23 – 18:10 – 24:5; *See also* deposition questions regarding consideration of lawsuit against HAMAS: RG 2015 pp. 119:6 – 120:11; RG 2008 pp. 46:3 – 47:16.

There are only two reasons to introduce such matters: to raise issues of comparative liability and other assessments of fault, or to argue or imply that Plaintiffs have other actual or potential sources of recovery. Neither is relevant to the jury's determination of the amount of damages to which each Plaintiff is entitled as a result of Arab Bank's already-determined liability. In the Court's April 17, 2015 Order at 2 (ECF No. 1245), the Court ruled that it could:

> imagine no relevant testimony that would be elicited by questions relating to plaintiffs' legal remedies against parties not involved in this lawsuit, or relating to

the role of Hamas in causing their injuries (which is no longer in issue in the current phase of the case.) Such questions are improper.

There is simply no legitimate purpose served by introducing such matters in front of the jury during the damages phase of trial. Defendant must, therefore, be precluded from introducing any evidence, eliciting any testimony or in any way mentioning other actual or potential lawsuits or litigants, or any person, entity or proceeding whose role, conduct or existence might be used by a jury to infer a basis for reducing the amount of damages.

> 9. **The Bank Should Be Precluded From Offering Any Testimony By The Plaintiffs In Response To Questions About What They Should Receive As Compensation For Their Injuries**

In the Court's Decision and Order of April 17, 2015, ECF No. 1245, the Court held the following at paragraph 6:

> …defendant has failed to show that questions asking a plaintiff to quantify his own emotional damages flowing from the loss of a relative are relevant. The question is inherently argumentative, and it inflicts unnecessary pain on a person that has already suffered pain. The determination will be the province of the jury, not the plaintiffs. Any further questions such as "Could any amount of money make you feel better" about the loss of a relative brought to my attention are likely to be sanctioned.

Prior to the Court's intervention, questions of this nature were asked of a number of Plaintiffs. *See* Depositions of EG 2015, pp. 201:24 – 202:8; LG 2007 pp. 57:21; RG 2015 pp. 117:22 – 118:22; CF 2015, pp. 169:20-170:24; Barbara Goldstein pp. 224:25-225:8. Since the Court has already ruled that such questions were irrelevant for purposes of depositions, Plaintiffs respectfully request that the Court order that Defendant is precluded from such questioning at trial.

11

Dated: July 21, 2015

                        Respectfully submitted

                        KOHN, SWIFT & GRAF, P.C.

By: /s/ Steven M. Steingard
    Steven M. Steingard, Esq.
    Stephen H. Schwartz, Esq.
    Neil L. Glazer, Esq.
    One South Broad Street, Suite 2100
    Philadelphia, PA 19107
    (215) 238-1700

OSEN LLC
Gary M. Osen, Esq.
Ari Ungar, Esq.
Aaron Schlanger, Esq.
2 University Plaza, Suite 201
Hackensack, New Jersey 07601
(201) 265-6400

ZUCKERMAN SPAEDER LLP
Shawn P. Naunton. Esq.
399 Park Avenue
New York, NY 10022
(646) 746-8655

TURNER & ASSOCIATES, P.A.
C. Tab Turner, Esq.
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

Attorneys for *Linde* and *Coulter* Plaintiffs

MOTLEY RICE LLC
Michael Elsner, Esq.
John M. Eubanks, Esq.
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
(843) 216-9000

Attorneys for *Almog* Plaintiffs

SAYLES WERBNER
Mark S. Werbner, Esq.
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
(214) 939-8700

HEIDEMAN NUDELMAN & KALIK, P.C.
Richard D. Heideman, Esq.
Noel J. Nudelman, Esq.
Tracy Reichman Kalik, Esq.
1146 19th Street, NW, Fifth Floor
Washington, DC 20036
(202) 463-1818

STONE BONNER & ROCCO LLP
James P. Bonner, Esq.
145 West 45th Street
New York, New York 10036
(212) 239-4340

Attorneys for *Litle, Roth*, and *Bennett* Plaintiffs